Amber Kinney, OSB No. 077063
Amber Kinney Law, LLC
210 SW Morrison St., Floor 4
Portland, OR 97204
971-432-7298
amber@amberkinneylaw.com

Stephen Kelly, CA Bar No. 275784 (pro hac vice pending)
Robert Muller, CA Bar No. 189651 (pro hac vice pending)
Cypress LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, CA 90025
424-901-0123
stephen@cypressllp.com
bob@cypressllp.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| LA BELLA PARTNERS, LLC, a California Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>CADENCE SL WEST LINN, LLC, an Arizona Limited Liability Company<br><br>Defendants. | Case No. 3:23-cv-00642<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND NEGLIGENCE**<br><br><u>JURY TRIAL REQUESTED</u> |

COMPLAINT – Page 1

## NATURE OF THIS ACTION

1. Jeff Damavandi is an accomplished Los Angeles real estate investor. In 2019, he and his partners began to discuss the potential purchase of an assisted living facility and memory care center in Clackamas County, Oregon called the "Tanner Springs" facility. Mr. Damavandi and his partners closed on this purchase in June of 2020, but needed a local and experienced manager to manage it. Mr. Damavandi eventually met and hired Cadence Senior Living, LLC, a company that advertises itself as:

> Cadence Living® is proud to offer a safe, friendly and comfortable environment for thousands of happy residents across the country to call home. Our experienced leadership and team members serve with integrity, compassion and expertise as they strive to deliver an outstanding quality of life to all seniors.

www.cadencesl.com/about-us/

2. At the time of the Damavandi Partners' purchase, the Tanner Springs facility operated at almost $50,000 a month in net income. However, after finalizing its management agreement with Damavandi and commencing its work in July 2020, Cadence failed at almost every aspect of its management of the Tanner Springs facility. Cadence failed to properly staff or supervise its operations, causing the facility to be investigated by the Oregon Department of Human Services ("DHS"), who ultimately issued 36 different statutory violations in July of 2021. The DHS found these violations to have caused and were likely to cause serious injury, serious harm, impairment, or death to Tanner Springs' residents. In July of 2021, as a result of these violations, the DHS issued conditions on Tanner Springs' operating license, restricting it from any new admissions and required it to hire extra consultants for administration and oversight.

Because of this failure of management, revenues decreased and operating expenses ballooned. By the end of its management in March of 2022, the Tanner Springs facility operated at an almost $250,000 monthly loss.

3. These conditions not only significantly increased Tanner Springs' operating costs, but decreased its overall income based on its inability to admit any new members. All of these losses are directly attributable to Cadence's negligence and failure to fulfil its contractual obligations.

4. Damavandi, via the Plaintiff, seeks to recoup these losses from Cadence for its acts and omissions in the management of the Tanner Springs facility from June of 2020 to March of 2022.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332.

6. Venue is appropriate under 28 U.S.C. § 1391 and LR 3-2 because a substantial part of the events giving rise to the claim occurred in this District, and because the Defendant operates or does business in this judicial District. Further, the parties agreed that disputes arising out of the subject matter of this complaint were exclusively to be brought within this District.

7. Divisional venue lies with the Portland Division as a substantial part of the events giving rise to the claim occurred within the Portland Division.

## PARTIES

8. Plaintiff La Bella Partners, LLC is a California Limited Liability Company with

its principal place of business also in the state of California.

9. Defendant Cadence SL West Linn, LLC is a Delaware Limited Liability Company. On information and belief, Cadence SL West Linn, LLC has its principal place of business in the State of Arizona.

## FACTS

The Parties

10. Through various trust instruments, Jeff Damavandi ("Damavandi") and his partners are the 90% equity owners of JFD Affordable Housing, L.P, a California Limited Partnership. ("JFD"). La Bella Partners, LLC ("La Bella") is the managing general partner of JFD. JFD is the 100% equity owner of DC West Linn Owner, LLC ("DC").

11. In 2020, Damavandi, through JFD and DC, purchased an existing senior living facility known as the "Tanner Spring Assisted Living & Memory Care Center" ("Tanner Springs") in Clackamas County, Oregon. Based on the representations as experienced care facility managers, DC entered into a Senior Facility Management Agreement (the "Cadence Agreement") with Cadence SL West Linn, LLC ("Cadence") for management services at the Tanner Springs facility. In March of 2022, Damavandi terminated the Cadence Agreement and hired a new manager, Ohana Ventures, LLC ("Ohana").

12. Prior to the filing of this Complaint, DC assigned its rights and obligations, including the current causes of action, under the Cadence Agreement to La Bella.

The Management Agreement

13. In June of 2020, DC and Cadence entered into the Cadence Agreement based on Cadence's representations as an experienced assisted living facility manager. Cadence was to

act as the exclusive operating manager for the Tanner Springs facility and had all power and authority to supervise, direct and control the day-to-day business activities, management, and operation during the term of the Cadence Agreement. Cadence was not permitted to delegate any of its obligations under the Cadence Agreement and was responsible for: 1) operation and affairs; 2) management; 3) employees; 4) billing accounts and collections; 5) services management; 6) payment services; 7) community relations; 8) pricing; 10) facility licensing; 11) facility evaluation; and 12) accounting of the Tanner Springs Facility. DC, as the "Owner" under the Cadence Agreement, is obligated to cooperate with Cadence for purposes of providing its services under the Cadence Agreement.

14. Cadence is required to perform these services in accordance with the applicable "Legal Requirements" and "Standards" as defined in the Cadence Agreement. The Standards, as defined in the Cadence Agreement, are those that are reasonably consistent with the operational standards and physical standards prevailing among other institutional owners, operators and managers of communities and business comparable to the Tanner Springs facility.

Cadence Operation of the Tanner Springs Facility

15. In July of 2020, the first full month in which Cadence operated the Tanner Springs facility, it operated with $103,943.21 in monthly net income. By February of 2022, the facility operated at an average operating loss of -$108,227.47 (on a 6-month average basis). The issue of this case is whether Cadence lived up to its obligations under the Cadence Agreement in allowing this to occur over a 19-month period.

16. As an initial matter, it is common knowledge that management and operation of an assisted care living facility like Tanner Springs required an experienced on the ground management team that is familiar with the local communities and regulators. The previous

owners of the Tanner Springs facility operated for almost 10 years in this manner without any significant reduction in operation or regulatory investigation.

<u>Cadence Fails to Properly Supervise the Tanner Springs Facility</u>

17. As detailed above, by July of 2021, regulators from the State of Oregon had investigated and imposed fines on the Tanner Springs facility. One of the regulators who conducted that investigation, Jeanne Bristow, discussed these issues with Damavandi and his attorneys. Ms. Bristow confirmed the following facts:

- Cadence primarily operates out of its headquarters in Scottsdale, Arizona. Cadence had no direct presence at the Tanner Springs Facility and in many circumstances "had no clue what was going on at the facility."

- Cadence, prior to the Tanner Springs Facility, had never operated a facility in Oregon under Oregon regulators. This caused significant conflict and unnecessary expense with Oregon regulators and showed a complete failure to operate the facility in accordance with the local regulatory framework. Ms. Bristow went so far as to confirm that Cadence "didn't understand the regulatory requirements. They had no clue."

- Cadence clearly had no systems in place to effectively set up and manage the operation at the Tanner Springs Facility.

18. Through its final report issued in July of 2021, the Oregon DHS found that Cadence:

- Failed to ensure required postings were displayed at the Facility;

- Failed to implement effective methods of responding to and resolving complaints;

- Failed to maintain complete and accurate records;

- Failed to implement ongoing quality improvement programs that evaluated services and staff performance;

- Failed to ensure residents were protected from neglect;

- Failed to implement proper nutrition and activity programs for its residents;

- Failed to ensure service plans were developed to accurately provide services to its residents;

- Failed to ensure a safe medication administration system was in place for all residents;

- Failed to ensure physician orders were carried out as prescribed;

- Failed to conduct fire and life safety drills;

- Failed to provide effective administrative oversight over the facility's operation;

19. All these findings were found to be in violation of various Oregon Administrative Rules ("OAR") and the basis for eventual licensing conditions to be imposed on the Tanner Springs facility.

Cadence Fails to Properly Manage and Hire Employees

20. Not only did Cadence fail to actually have systems in place to be able to operate the Tanner Spring facility, it wholly failed to properly manage and hire trained employees.

21. Prior to DC's purchase of the Tanner Springs facility, the facility was managed by an experienced administrator with years of experience and little to any turnover at the facility. However, shortly after the purchase and Cadence taking over management of the facility, the

legacy employees found Cadence "had no clue" how to operate the facility in accordance with the Oregon regulations, which caused significant turnover from these employees, including from the experienced administrator who operated the facility with the previous owners. These facts were confirmed by the administrator at the Tanner Springs Facility at the time of DC's purchase of the facility.

22. After the DHS report was published, former employees at the facility described to DC that after the sale to DC, many of the employees quit or were fired which caused significant employment shortcomings.

23. These staffing problems were also the basis of the Oregon DHS' later order imposing conditions on the Tanner Springs Facility, as DHS found that Cadence failed to have sufficient number of caregivers to meet the 24-hour scheduled and unscheduled needs of each resident and failed to properly train its direct care staff.

Cadence Incurs Unnecessary Increased Expenses

24. In an attempt to overcome their staffing shortcomings and because it lacked any real presence in Oregon, Cadence turned to a staffing agency, Registry, to fill its open positions at the Tanner Springs facility. However, this agency incurred exorbitant fees which were paid indirectly by DC through Cadence. Between July of 2020 and January of 2022, the additional expense incurred by the use of the Registry firm equaled:

- $695,189.83 in Registry fees paid; and
- $273,577.80 in increased salaries

25. This equaled $968,747.63 in additional cost to DC.

DHS Investigation and License Condition

26. In July of 2021, after a comprehensive investigation by the Oregon Department

of Health Services, an order was entered against the Tanner Springs Facility that:

- No further admission of any residents until further notice
- For Cadence to hire a Registered Nurse Consultant to provide recommendations and training to facility administration and oversight
- Meet increased staffing requirements
- Undergo extensive staff training;

27. If these conditions were met, the license condition would be removed 45 days after a reevaluation was conducted by the Oregon DHS.

28. Obviously, the imposition of this order not only severely increased expenses and reduced revenue, but dramatically tarnished the goodwill built by the Tanner Springs facility and purchased by DC. For almost 7 months from July of 2021 to February of 2022, the Tanner Springs facility was unable to admit any new residents or transfers from other facilities. This order essentially putting a revenue cap on DC's investment a year into their ownership of the Tanner Springs Facility. Because of the imposition of this cap, from July of 2021 to August of 2021, the Tanner Springs facility's revenues dropped on a month-to month basis by almost $50,000. By January of 2022, this revenue dropped by almost $100,000 on a month to month basis.

29. Furthermore, an imposition of a regulatory fine and order imposing conditions on the Tanner Springs facility is a proverbial death kneel in the assisted living care business. This order and its findings are all public documents and permanently attached to the license affiliated with the Tanner Springs facility. Any potential or existing resident can simply look up the facility and see the imposition of this order and the multiple failings of Cadence in the operation of the Tanner Springs facility.

30. The registered nurse consultant required by the July 2021 order performed an extensive evaluation and recommendation process at the Tanner Springs facility. This nurse consultant, required solely as a result of the July 2021 order, billed Cadence (and therefore indirectly the Damavandi Partners) on average, $50,000 per month from July of 2021 through October of 2021. This expense was completely caused by and a result of Cadence's failure to fulfill its contractual obligations. In total, the registered nurse consultant hired by Cadence pursuant to the Oregon DHS order cost Cadence and indirectly Damavandi, $303,196.49 from July of 2021 to January of 2022.

Cadence Removed As Manager of the Tanner Springs Facility

31. Cadence was not able to remove the license conditions from the Tanner Springs facility until February of 2022. Based on this clear negligence and breach of the Cadence Agreement, in March of 2022, DC began to transition management of the Tanner Springs facility from Cadence to a new and more experienced local manager, Ohana Ventures, LLC.

32. In February of 2022, DC terminated the Cadence Agreement pursuant to Section 11.4 of the Cadence Agreement.

33. Pursuant to the transition agreement, Cadence was terminated as the manager effective April 1, 2022 and Ohana was introduced the same day. Since this transition, Ohana has returned revenues and losses to a more historical average without additional needed expenses.

34. After Ohana took control of the Tanner Springs facility, Ohana instituted a local, on the ground management system. By February of 2023, Ohana returned Tanner Springs' Net Ordinary Income to historical averages, showing almost $130,000 of net income prior to depreciation, amortization and mortgage interest expenses and $14,000 net of all expenses.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract As Against Cadence)**

35.  The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth here.

36.  The Cadence Agreement constitutes a valid and enforceable contract between DC and Cadence. La Bella is the current assignee of the rights and obligations under the Cadence Agreement.

37.  DC fully performed all obligations under the Cadence Agreement.

38.  Cadence materially breached the Agreement by failing to:

   a. Perform the obligations under the Severance Agreement in conformance with the "Standards" as described in Sections 4 and 12 of the Cadence Agreement.

   b. Perform the obligations in the operation and affairs of the Tanner Springs Facility.

   c. Perform the obligation in the management of employees and contractors at the Tanner Springs Facility.

39.  As a direct and proximate result of Cadence's breach of the Cadence Agreement, DC has suffered damages in an amount to be proven at trial, but not less than $75,000.

**SECOND CLAIM FOR RELIEF**

**(Negligence as Against Cadence)**

40.  The allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth here.

41.  Cadence owed a duty of care to DC to perform the services under the Cadence

Agreement with the level of skill, care and diligence ordinarily exercised by persons and entities in the same business currently operating under similar circumstances.

42. Cadence breached the duty of care by failing to perform the services under the Cadence Agreement with the level of skill, care and diligence ordinary exercised by persons and entities in the same business currently operating under similar circumstances.

43. As a direct and proximate result of Cadence's breach of duty, DC has suffered damages in an amount to be proven at trial, but not less than $75,000.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully request that this Court enter judgment in Plaintiff's favor and:

A. Enter judgment in favor of La Bella and against Cadence for damages in an amount to be proven at trial, but not less than $75,000.

B. Award La Bella pre-judgment and post-judgment interest at the maximum rate allowed by law;

C. Award La Bella costs, and expenses as permitted by law; and

D. Grant such other and further relief as this Court deems just and proper.

Dated this 3rd day of May, 2023

**Cypress, LLP**

By: /s/ Stephen Kelly
Stephen Kelly, California State Bar No. 275784 (pro hac vice motion pending)
Robert Muller, California State Bar No. 189651 (pro hac vice motion pending)
11111 Santa Monica Boulevard, Suite 500
Los Angeles, CA 90025
Telephone:	424-901-0123

      Facsimile:  424-750-5100
      stephen@cypressllp.com
      bob@cypressllp.com


       /s/ Amber Kinney
      Amber Kinney, OSB No 077063
      Amber Kinney Law, LLC
      210 SW Morrison St., Floor 4
      Portland, OR 97204
      Telephone:  971-432-7298
      amber@amberkinneylaw.com


      *Attorneys for Plaintiff*

COMPLAINT – Page 13